USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/16/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JUEL ROUNDTREE,

                        Plaintiff,

           -v -

THE CITY OF NEW YORK, LIEUTENANT
CHRISTOPHER CHENG, OFFICER
STEPHEN MALONE, and JOHN DOE
OFFICERS (1–4)

                       Defendants.
-----------------------------------------------------------------X

1:15-cv-6582-GHW

OPINION AND ORDER

GREGORY H. WOODS, District Judge:

      Plaintiff Juel Roundtree was walking with friends late one night on Ninth Avenue in Manhattan. Several New York City Police Department ("NYPD") officers approached and accused Mr. Roundtree and his friends of drinking in public. Suddenly, and without provocation, the officers assaulted and arrested Mr. Roundtree. Although a criminal prosecution of Mr. Roundtree ensued, the charges against him were ultimately dismissed.

      Mr. Roundtree brings this *pro se* action under 42 U.S.C. § 1983 and New York state law, alleging, among other things, that Defendants falsely arrested him, used excessive force during his arrest, falsely imprisoned him, maliciously prosecuted him, and denied his right to a fair trial. Defendants City of New York ("City"), Lieutenant Christopher Cheng, and Officer Stephen Malone move pursuant to Federal Rule of Civil Procedure 12(c) for partial judgment on the pleadings with respect to all of Mr. Roundtree's claims except his federal claim for malicious prosecution. For the reasons stated below, the motion is granted in part and denied in part.

**I.     BACKGROUND**

Shortly after midnight on February 27, 2012, Mr. Roundtree was walking in Manhattan with his common-law wife and a few friends. Third Amended Complaint (ECF No. 44), ¶ 12 ("TAC."). They were not engaged in any criminal activity. *Id.* ¶ 12. Suddenly, several police officers approached the group, including Lieutenant Cheng, who had his hand on his weapon. *Id.* ¶ 14. Lieutenant Cheng "walked a few feet away, picked up a container out of the gutter, and falsely accused the entire group of drinking in public." *Id.* After Lieutenant Cheng demanded identification, Mr. Roundtree produced his New York State "F.D.N.Y. Fireguard License." *Id.* ¶ 15. Lieutenant Christopher Cheng said he "didn't like" that form of identification and asked Mr. Roundtree to produce a different one. *Id.* As Mr. Roundtree was producing another form of identification, Lieutenant Cheng yelled, "lock this fat n****r, the f**k up!!" *Id.* Lieutenant Cheng then ordered "4 rookies" to arrest Mr. Roundtree. *Id.*

The "rookies" threw Mr. Roundtree against a vehicle and handcuffed him tightly. TAC ¶ 16. The officers struck Mr. Roundtree in the back, attempted to trip him to the ground, and slammed him into the side of a van. *Id.* ¶ 19. None of the officers tried to intervene. *Id.* ¶ 23. Finally, the officers drove Mr. Roundtree to the Midtown South precinct where he was strip-searched and left in a holding cell without food or water for fourteen hours. *Id.* ¶¶ 19-21. Thereafter, Mr. Roundtree alleges that the officers gave false statements about the incident that resulted in the criminal prosecution of Mr. Roundtree. *Id.* ¶ 24.

On August 28, 2012, while the criminal charges were still pending, Mr. Roundtree was struck by a speeding taxi. Pl.'s Opp'n (ECF No. 83) ("Pl.'s Opp'n"), at 2. As a result, he suffered "an impact stroke" during which he "flatlined" twice, causing "traumatic brain injury, loss of memory, [and] various cognitive defects and deficiencies." *Id.* Thereafter, he experienced "a melancholy state of mind" during which "basic life activities became desultorally [sic] disorganized." *Id.* Mr.

Roundtree also alleges that he suffered "partial paralysis, loss of income, [and] mental disorientation," causing "limited psychosis" and homelessness following the accident. *Id.*

The criminal charges against Mr. Roundtree were dismissed on March 19, 2013. TAC ¶¶ 47, 54. According to Mr. Roundtree, he received proof of the favorable resolution of the case approximately 90 days later. Pl.'s Opp'n at 2. Thereafter, he contacted several attorneys about filing a civil action against the City. *Id.* One attorney agreed to represent Mr. Roundtree, but approximately three or four months later informed Mr. Roundtree that he would not take the case. *Id.* At some point during those three or four months, Mr. Roundtree was arrested and detained in connection with an unrelated incident. *Id.* While detained, he experienced frequent delays in receiving his mail, and also received damaged mail. *Id.*

Mr. Roundtree commenced this action *pro se* on August 19, 2015, ECF No. 2, and filed the TAC on April 17, 2017. ECF No. 44. The City filed this motion on June 19, 2017, before the individual defendants were served. ECF No. 60. On July 24 and August 1, 2017, respectively, the Court deemed the City's partial motion for judgment on the pleadings as Lieutenant Cheng and Officer Malone's responses to the TAC. ECF Nos. 67, 73.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings under Rule 12(c), the Court employs the same standards as those applicable to a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Thus, the Court "will accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiff's] favor." *Id.* (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest claims it suggests."). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Id.* at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of

a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

III. DISCUSSION

### A. Without Application of Equitable Tolling, Plaintiff's Federal False Arrest, Excessive Force, and Failure to Intervene Claims are Time-Barred

The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (alterations in original)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *accord Pearl*, 296 F.3d at 80. Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). "The reference to knowledge of the injury does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful. Rather, the claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (internal alterations, quotation marks, and citations omitted).

Mr. Roundtree's false arrest, excessive force, and failure to intervene claims each accrued when they occurred on February 27, 2012. *See Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006)) ("A cause of action for false arrest accrues at the time of detention.") (internal citation omitted); *Jennings v. Municipality of Suffolk Cty.*, No. 11-cv-00911-JFB-ARL, 2013 WL 587892, at *4 (E.D.N.Y. Feb. 13, 2013) (quoting *Fairley v. Collins*, No. 09-cv-6894-PGG, 2011 WL 1002422, at *3 (S.D.N.Y. Mar. 15, 2011)) ("In the context of an excessive force claim, the clock starts running 'when the use of force occurred.'").

5

Accordingly, absent tolling, the statute of limitations on Mr. Roundtree's false arrest, excessive force, and failure to intervene claims expired on February 27, 2015. Plaintiff's initial complaint was filed on August 19, 2015, ECF No. 2, nearly six months after the limitation period expired.

### B. Time-Barred Federal Claims May Warrant Equitable Tolling

Mr. Roundtree concedes that he failed to file this action within three years of his arrest. *See* TAC ¶ 39 ("This action has been commenced within 3 years of *the termination and dismissal of docket #2012NY016293* upon which the claim is based.") (emphasis added). Mr. Roundtree contends that his claims should be preserved, however, by application of the doctrine of equitable tolling. Because the record does not contain information sufficient to resolve the tolling question, his federal claims for false arrest, excessive force, and failure to intervene claims must be permitted to proceed.

Compliance with the statute of limitations is not a jurisdictional bar to claims arising under Section 1983. Consequently, such claims may be subject to equitable tolling. *Jefferson v. Kelly*, No. 06-cv-6616-NGG-LB, 2008 WL 1840767 at *4 (E.D.N.Y. Apr. 22, 2008) (noting in a Section 1983 action "that a statute of limitations is not jurisdictional, but rather is subject to waiver, estoppel, and equitable tolling."); *Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448, 456 (S.D.N.Y. 2013) (permitting equitable tolling of claims in a Section 1983 action). "Under the doctrine of equitable tolling, a court may, under compelling circumstances, make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003). However the doctrine is reserved for "rare and exceptional" circumstances. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the

circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal quotation marks omitted). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

According to Mr. Roundtree, he is entitled to equitable tolling for several reasons, which include: (i) that he was defrauded by concealment of the underlying facts; (ii) that he was unable to pursue his claims because of physical and mental health conditions arising out of his August 28, 2012 accident; and (iii) that he was unable to pursue his claims because he was incarcerated. *See* Pl.'s Opp'n, at 2. For example, Mr. Roundtree asserts that he is entitled to equitable tolling because of the "fraudulent concealing of the wrongs done by the defendants," Pl.'s Opp. at 3, and that, by the time he learned that his attorney was not proceeding with his case he was "jailed," "crippled without aid, comfort, or even consideration for his medical condition, . . . attacked several times, and denied access to the courts (all his mail came back months later destroyed, notice of claim, & letters to the media about his plight), prevent[ing] his ability to file suit." *Id.* at 2. Mr. Roundtree also asserts that he experienced:

> traumatic brain injury, loss of memory, various cognitive defects and deficiencies, giving [him] a melancholy state of mind, where his basic life activities became desultorally [sic] disorganized. His partial paralysis, loss of income, and mental disorientation bred limited psychosis etc., which caused the plaintiff to become homeless, and in the interim, he was recovering from several severely broken bones, could barely walk, and was forced to not only concentrate on his myriad of medical issues, but also, day to day survival.

Pl.'s Opp'n at 2.

7

Similar circumstances have warranted equitable tolling in other cases. *See, e.g., Zerilli–Edelglass*, 333 F.3d at 80-81 (equitable tolling warranted where "a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion"); *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (equitable tolling may be warranted where prison conditions prevent a prisoner from timely filing); *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (quoting *Keating v. Carey*, 706 F.3d 377, 382 (2d Cir. 1983) ("This court recognizes an equitable tolling doctrine . . . when a 'defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action.'"). There "may be substance" to Mr. Roundtree's claim for equitable tolling on one or more of these bases. *Brown v. Parkchester S. Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002). Because "the statute of limitations is an affirmative defense not required to be negated on the face of the pleadings," and Mr. Roundtree has proffered arguments that may support a finding of grounds for equitable tolling, the motion must be denied with respect to Mr. Roundtree's federal claims, "without prejudice to renewal of the[ ] limitations defense in later summary judgment motion practice or at trial."[1] *Cortes v. City of New York*, 700 F. Supp. 2d 474, 482 (S.D.N.Y. 2010); *see also Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (quoting *Brown*, 287 F.3d at 60) (finding that the "'highly case-specific inquiry' called for" to determine whether equitable tolling is warranted "is most appropriately conducted by the district court in the first instance"); *Colon v. Goord*, 115 F. App'x 469, 471 (2d Cir. 2004) (summary order) (remanding to allow plaintiff to "develop evidence and argument regarding his entitlement to equitable tolling"); *Valverde v. Stinson*, 224 F.3d 129, 135 (2d Cir. 2000) (remanding "with instructions

---

[1] Although Mr. Roundtree has not submitted a sworn statement setting forth the facts underlying his argument for equitable tolling, given that he is proceeding *pro se*, the Court considers his handwritten and signed opposition to Defendants' motion for judgment on the pleadings sufficient to put the equitable tolling issue in question.

for [the district court] to develop further the facts" regarding the plaintiff's entitlement to equitable tolling). Although Mr. Roundtree has presented evidence sufficient to survive a motion for judgment on the pleadings, it will not necessarily be "sufficient to establish his ultimate entitlement to equitable tolling." *Valverde*, 224 F.3d at 135 (collecting cases).

### C. The Court Cannot Determine, at This Time, Whether Plaintiff's Right to a Fair Trial or False Imprisonment Claims are Time-Barred

A different analysis applies to the denial of a right to a fair trial through fabrication or falsification of evidence and false imprisonment claims. Because Mr. Roundtree has not pleaded all of the information needed to determine whether these claims are time-barred, they may proceed.

#### i. Right to Fair Trial

The leading case in this Circuit regarding claims for deprivation of the right to fair trial is *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997), in which the Second Circuit held that the claim accrues when the officer in question forwards false information to the prosecutors. *See also Garnett v. Undercover Officer C0039*, 838 F.3d 265, 275 (2d Cir. 2016). Even construing Mr. Roundtree's pleadings and arguments liberally, as the Court must, it is unclear when the officers who arrested Mr. Roundtree forwarded information about the arrest to prosecutors. Though Mr. Roundtree alleges that he was in custody for fourteen hours on February 27, 2012, he does not allege any facts concerning his arraignment or release. Instead, Mr. Roundtree alleges that he did not learn of the criminal prosecution against him for "months" after his arrest. Pl.'s Opp'n at 1. Construing Mr. Roundtree's claims liberally, Mr. Roundtree plausibly pleads that information was forwarded to prosecutors in the months following his arrest—including, potentially, the time period after August 19, 2015— in which case, the claim may be timely. Because the Court cannot decide this question on the current record, the motion for judgment on the pleadings must be denied, without prejudice, as to this defense. Defendants may raise the issue on a more complete record.

9

ii.     **False Imprisonment**

"An alleged false imprisonment ends when 'the victim becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges.'" *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009). At that point, the three-year statute of limitations begins to run. Although Defendants assert that Mr. Roundtree was arraigned on February 27, 2017 [sic], the pleadings do not state when Mr. Roundtree was arraigned. Defendants do not present a basis in the pleadings or a document referenced in or integrated into the pleadings, or information of which the Court can take judicial notice, to support their bald statement of fact.[2] The TAC may be read to suggest that Mr. Roundtree was released the same day as his arrest, *see* TAC ¶ 21 ("Plaintiff languished 14 hours in extreme pain . . . denied medical attention, food, and water his entire time there"), but even this inference does not necessarily establish that he was arraigned on the day of his release. Mr. Roundtree also argues that he did not have "proof" of false imprisonment, or his other claims, for "close to a year." Pl.'s Opp'n at 1. Because the Court must, at this stage, draw inferences from the pleadings in the light most favorable to Plaintiff, it cannot at this time determine the timing of his arraignment and, therefore, that the federal false imprisonment claim is time-barred.

**D. The New York State Law Claims Must be Dismissed for Failure to Timely File a Notice of Claim**

In addition to claims under Section 1983, the TAC can be construed to raise various state law claims. Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees. N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1); *C.S.A. Contracting Corp. v. N.Y. City Sch. Constr. Auth.*, 833 N.E.2d 266, 268 (N.Y. 2005); *see also Fincher v. Cty. of Westchester,* 979 F. Supp. 989, 1002 (S.D.N.Y. 1997); *Rose v. Cty. of Nassau*, 904 F.

---

[2] Defendants misstate the purported date of Mr. Roundtree's arraignment as February 27, 2017, and, furthermore, do not provide any citation for this assertion. Defs.' Mem. of Law (ECF No. 62), at 6.

Supp. 2d 244, 247-48 (E.D.N.Y. 2012). "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (quoting *Fincher,* 979 F. Supp. at 1002). "The notice of claim must provide, among other things, the nature of the claim and must be filed within ninety days after the claim arises." *Rose*, 904 F. Supp. 2d at 248 (citing N.Y. Gen. Mun. Law § 50-e). "In addition, the plaintiff must plead in his complaint that: (1) he has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or satisfy the claim." *Id.* (citing § 50-i). "'Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action' for lack of subject matter jurisdiction." *Tulino v. City of New York*, No. 15-cv-7106 (JMF), 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (quoting *AT&T Co. v. N.Y.C. Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases)).

The notice-of-claim requirement does not apply to federal claims brought under Section 1983. *See, i.e., Bordeau v. Metro. Transit Auth.*, No. 06-cv-6781-DLI, 2008 WL 4455590, at *1 (E.D.N.Y. Sept. 30, 2008). However, "in a federal court, state notice-of-claim statutes apply to *state-*law claims." *Hardy*, 164 F.3d at 793 (emphasis in original) (citation omitted); *see also Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) (quoting *Fincher*, 979 F. Supp. at 1002) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.").

Mr. Roundtree failed to plead any facts related to a notice of claim in the TAC. Moreover, he conceded in his opposition to Defendants' motion that no notice of claim was filed until August

11

19, 2015, when this action was commenced.³ *See* Pl.'s Opp'n at 11. Consequently, Mr. Roundtree's state law claims must be dismissed.

   **E. Plaintiff Fails to State a *Monell* Claim**

A municipality is not vicariously liable for its employees' actions under Section 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 691). Municipalities are, however, liable for "their *own* illegal acts." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)). Plaintiffs seeking to hold a municipality liable under Section 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). A plaintiff may satisfy the "policy or custom" prong in one of four ways: by alleging the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. at 483-84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

---

³ Because Mr. Roundtree failed to satisfy the requirements of N.Y. Gen. Mun. Law § 50-e, the Court need not reach the question whether Mr. Roundtree's claims were timely filed under the applicable statute of limitations. The Court observes, however, that New York applies a one year and 90 day statute of limitations "when, as in this case, a plaintiff sues the City (or an individual whom the City must indemnify)." *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016). Mr. Roundtree commenced this action on August 19, 2015—just under three and a half years from the date of his arrest and brief detention. In other words, the one year and 90 day time period elapsed three times between the time of the incident and the filing of this action.

Mr. Roundtree's claims fall under the third and fourth categories. He alleges that the City has "customs, policies, usages, practices, or procedures" that include "wrongfully arresting and unreasonably harassing and brutalizing innocent member [sic] of the public" without probable cause; "manufacturing and falsifying evidence against individuals allegedly involved in illegal activities"; "unlawfully searching and detaining people and/or seizing their property in the absence of any reasonable suspicion"; and "arresting innocent people to meet productivity goals (i.e. arrest quotas)." TAC ¶ 84(a)-(d).[4] For purposes of this motion only, the Court will assume that Lieutenant Cheng and Officer Malone violated Mr. Roundtree's constitutional rights—but even with that assumption, Mr. Roundtree's *Monell* claim fails because he has not pleaded facts that plausibly allege the existence of municipal policy that amounts to deliberate indifference.

i. **Failure to Discipline**

The Second Circuit has held that "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Bastista v.*

---

[4] In his opposition, Mr. Roundtree also claims that there is a basis for *Monell* liability because the New York County District Attorney is responsible, by virtue of his role as manager of the District Attorney's Office, for all acts undertaken by any member of the District Attorney's Office. As a result, according to Mr. Roundtree, the county may be held responsible for any action taken by anyone in the District Attorney's Office. This is an incorrect statement of the law. "[B]ecause prosecutors are subject to a rigorous 'regime of legal training and professional responsibility,' a municipality cannot be said to be on notice of a recurrent problem in a district attorney's office simply because a prosecutor erred in one case.'" *D'Alessandro v. City of New York*, ---Fed. App'x---- (2017), No. 17-cv-594, 2017 WL 46441256, at *7 (2d Cir. Oct. 17, 2017) (summary order) (quoting *Connick*, 563 U.S. at 66-67). Furthermore, "where the complaint 'fail[s] . . . to allege any facts to support [the] contention that the challenged actions were in any way related to a custom or policy promulgated by the New York County District Attorney's Office,' the pleading is insufficient." *D'Alessandro*, 2017 WL 46441256, at *7 (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)). The TAC, even when read in the light most favorable to Mr. Roundtree, does not contain any claims against the District Attorney or the District Attorney's Office in connection with their conduct in his case, let alone any custom or policy promulgated by the District Attorney's Office.

13

*Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (collecting cases). Such inaction rises to the level of a municipal policy "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 737 (1989)).

Mr. Roundtree alleges that "[t]he NYPD once receiving a substantiated complaint by the [Civilian Complaint Review Board] fails to adequately discipline officers for misconduct." TAC ¶ 87. He further alleges that the City "has been aware for some time, from lawsuits, notice [sic] of claim, complaints filed with the Civilian Complaint Review Board, and judicial ruling [sic] suppressing evidence and finders [sic] officers incredible as a matter of law, that a disturbing number of their police officers [are] unlawfully searching citizens and seizing property, bring [sic] charges against citizens with no legal basis, perjure [sic] themselves in charging instruments and testimony, and fail [sic] to intervene in and report the obviously illegal actions of their fellow officers." TAC ¶ 85. These are precisely the types of conclusory allegations that, without factual support, must be dismissed. The TAC does not include the concrete facts necessary to support a plausible inference that Defendants' actions were taken pursuant to a municipal policy.[5]

---

[5] Mr. Roundtree relies on an unidentified New York City Bar Association report that was "issued in 2000," which purportedly states that "the City and [former police commissioner] Kelly have isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of civil actions." TAC ¶ 89. Further, Mr. Roundtree relies on an unidentified report in which "Alan Hevesi, as New York City Comptroller in 1999 reported that there was 'a total disconnect' between the settlements of even substantiated substantial civil claims and police dept. action against officers." *Id.* These allegations are insufficient to support a plausible inference that Defendants' actions were taken pursuant to municipal policy. The Court is similarly unpersuaded by Mr. Roundtree's reference to *Colon v. City of New York*, Nos. 09-cv-0008-JBW, 09-cv-0009-JBW, 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009). "While Judge Weinstein opined, in *dicta*, in 2009 that there was evidence of a widespread custom of the City approving the fabrication of evidence by NPYD officers, . . . the Court respectfully declines to rely on this conclusion reached in the context of a particular case . . . . even accepting this finding, there is no evidence indicating that the alleged fabrication of evidence in this case was caused by this custom." *Aguirre v. City of New*

In addition, Mr. Roundtree's conclusory statement that his arrest was "not an isolated incident," TAC ¶ 85, without alleging other similar occasions, fails as a matter of law.[6] *See Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees.") (citing *Monell*, 436 U.S. at 694); *see also Jones v. Town of East Haven*, 691 F.3d, 72, 85 (2d Cir. 2012) (holding that two or three instances "fell far short of showing a policy, custom, or usage" and "showed no instances in which supervisors were aware of abuse"). In addition to failing to allege a pattern of use of excessive force, Mr. Roundtree has failed to allege non-conclusory facts regarding a "persistent" failure to discipline officers during the relevant time period.

Finally, Mr. Roundtree alleges that the "customs, policies, usages, practices and rules of the City of New York, constituted a deliberate indifferance [sic] to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff, were the proximate cause of, and moving force behind the constitutional violations suffered by the plaintiff." *Id.* ¶ 91. Mr. Roundtree does not argue—nor could he on the facts alleged—that the February 27, 2012 incident falls within the "narrow range of circumstances" in which it is not necessary to plead a pattern of similar violations to show deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 63 (2011). This is not the unusual case in which a single constitutional violation can be said to establish an official policy. *See id.*

---

*York*, No. 15-CV-6043-PKC, 2017 WL 4236552, at *6 (E.D.N.Y. Sept. 22, 2017); *see also Bleiwas v. City of New York*, No. 15-cv-10046-ER, 2017 WL 3524679, at *9 (S.D.N.Y. Aug. 15, 2017) ("Plaintiff's reliance on *Colon*, issued approximately eight years ago, has very little, if any, bearing on the City's practices today in 2017.").

[6] The Court is not persuaded by Mr. Roundtree's unsubstantiated and conclusory allegations that "[t]he existence of the unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long history of civil actions in state and federal courts." TAC ¶ 33.

15

ii. **Failure to Supervise or Train**

"A municipality may be liable under § 1983 in cases of police brutality where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference." *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) (citing *Fiacco v. City of Rensselaer,* 783 F.2d 319, 326 (2d Cir.1986)). To allege deliberate indifference in the context of a claim for failure to supervise or failure to train, a plaintiff must plead facts giving rise to a plausible inference that (1) the municipality knows "to a moral certainty" that its employees will confront a given situation, (2) either the situation presents the employees with a difficult choice of the sort that training will make less difficult, or there is a history of employees mishandling the situation, and (3) the wrong choice by the employee will frequently cause a constitutional deprivation. *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. In order for municipal liability to attach under Section 1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Here, Mr. Roundtree alleges that the City failed to "ensur[e] that reasonable and appropriate levels of supervision were in place over the NYPD." TAC ¶ 29. He further alleges that "[d]espite ample notice and/or knowledge of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to ensure that NYPD members engaged in police conduct in a lawful and proper manner, inclusive of use of their authority as law enforcement officers with respect to the general public and specifically the plaintiff" and that the City "deliberately and intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of police authority by its NYPD employees and thereby deliberately

16

and intentionally adopted, condoned and otherwise created through deliberate inaction and negligent supervision and NYPD policy, practice and custom of utilizing illegal and impermissible searches, arrests and detentions and manufacturing of evidence in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions; as well as the Patrol Guide, up to and including plaintiff's arrest." *Id.* ¶¶ 30, 31; *see also id.* ¶ 36.

Mr. Roundtree does not assert any factual allegations to support this conclusion, however. Instead, Mr. Roundtree asserts that the City failed to properly supervise or discipline the NYPD because Lieutenant Cheng, a "ranked officer," was "responsible for a # of rookie officers, including the 4 or 5 who accompanied him during plaintiff's arrest, . . . [and] the very idea that these officers might have believed they had probable cause . . . suggest[s] they had very poor training indeed." Pl.'s Opp. at 8. Even assuming that Lieutenant Cheng did fail to properly train or supervise the four or five rookie officers at the time of Mr. Roundtree's arrest, that is not a sufficient basis for *Monell* liability. First, the fact that Lieutenant Cheng is a "ranking" official does not render him a "policymaker" for purposes of *Monell* liability. "[T]he court must determine whether that official had final policymaking authority in the particular area involved. It does not suffice for these purposes that the official has been granted discretion in the performance of his duties." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (citations omitted); *see also Russo v. City of Hartford*, 341 F. Supp. 2d 85, 108 (D. Conn. 2004) (holding that a police chief could not be deemed a final policymaker because he "remained accountable to department and city policy" and "the City Charter vest[ed] policymaking authority in the City Council and the City Manager"); *Allen v. City of New York*, No. 03-cv-2829-KMW-GWG, 2007 WL 24796, at *21-22 (S.D.N.Y. Jan. 3, 2007) (concluding that evidence that a city official had "full responsibility for the operation of a particular function within a municipality" was insufficient to prove that the official was the "final policymaker" in that area). Second, to state a claim for failure to train, a plaintiff must demonstrate that there has been a "*pattern*

17

of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. (emphasis added). Mr. Roundtree's allegations fall far short of establishing such a "pattern." In fact, his allegations concern only a single specific incident—his own arrest—which involved only a small number of officers.

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (internal quotation marks and citation omitted). For the reasons set forth above, Mr. Roundtree's allegations, are insufficient to state a claim on the basis of a failure to train. Because the TAC fails to state a claim of municipal liability on any of Mr. Roundtree's theories, Defendants' motion for judgment on the pleadings is granted with respect to the *Monell* claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion on the pleadings is granted in part and denied in part. As set forth above, Defendants' motion is denied without prejudice as to Mr. Roundtree's § 1983 claims. Defendants' motion is granted, with prejudice, as to Mr. Roundtree's state law claims and *Monell* claim.

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to close the motion at Dkt. No. 60, terminate Defendant City of New York from this action, and mail a copy of this order to Plaintiff by certified mail.

SO ORDERED.

Dated: January 12, 2018  
New York, New York

GREGORY H. WOODS  
United States District Judge

18